IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05cr68-T |
| | ) | [WO] |
| | ) | |
| KEITH ELDRIDGE WILLIAMS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on defendant's ["Williams"] Motion to Suppress (Doc. # 21) evidence obtained as the result of an allegedly unlawful traffic stop, *inter alia* (Doc. # 21).

Having reviewed the parties' submissions and considered testimony at an evidentiary hearing, the magistrate judge recommends that the motion be granted in part and denied in part.

**I.   FACTS AND PROCEDURAL HISTORY**

In the early evening hours, between 7:00 and 7:30, on 8 March 2005, Alabama trooper Andy Sutley ["Sutley"] was patrolling in his trooper car on Eastern Boulevard in Montgomery, near its intersection with I-85.  He received instructions to follow the vehicle that Williams was driving for the purpose of establishing grounds to initiate a traffic stop (Suppression Hr'g Tr. ["Tr."] 5).

Sutley observed Williams' commission of several traffic violations, including turning without a signal, driving on the wrong side of the road and failing to stop at a stop sign, before

turning on his rooftop beacons to signal Williams to stop his vehicle (Tr. 6). ALA. CODE §§32-5A-112, -130, -133 (2004). When Williams proceeded to the next intersection, Sutley illuminated the interior of Williams's car with his spotlight, whereupon he saw Williams reach over into the passenger area and then "reach back as if he was putting something in his pocket." *Id.* After signaling his intent to turn right, Williams did so and proceeded approximately 50-75 feet before finally stopping. *Id.*

Sutley approached Williams's vehicle and asked him for his driver's license, at which time he smelled alcohol and an "overwhelming odor" of marijuana (Tr. 7, 15).[1] As Williams reached for his wallet, he appeared exceedingly nervous (Tr. 7, 16). In fact, Sutley testified, "He was shaking very badly. When he did get his license out, his hands were shaking so bad he had to hold his right hand with his left wrist, and, finally, he had to press it against the door to keep his hand from shaking" (Tr. 7).

Sutley then asked Williams to exit the vehicle and step to the rear of the car, in between his car and the patrol car (Tr. 8). When Williams complied, Sutley noticed a bulge in the pocket of Williams's jacket (Tr. 8). After obtaining consent, Sutley frisked Williams for weapons, but Williams resisted somewhat by turning his body away from Sutley's hands (Tr. 8). Sutley admonished Williams and completed the frisk, eventually feeling what he believed to be a bag of marijuana in Williams's pants pocket (Tr. 9).

Without advising Williams of his *Miranda* rights,[2] Sutley asked Williams if, indeed,

---

[1]   At the time, he was not sure whether it was burnt or raw marijuana he smelled (Tr. 15).

[2]   *Miranda v. Arizona,* 384 U.S. 436 (1966)

he had a bag of marijuana in his pocket, and Williams admitted that he did (Tr. 9). Sutley removed the contraband and placed it on Williams's car before handcuffing Williams and placing him in the patrol car (Tr. 10).

A search of the vehicle led to the discovery of an open container of alcohol on the front passenger seat as well as money, a "big green tub" with "green plant material [Sutley] thought was Marijuana," several firearms and a "freeze dried food saver system and bags." *Id.* Sometime during the course of the search or shortly thereafter, Sutley took note of a vehicle that had passed by several times, and he called for assistance (Tr. 10).

Thereafter, additional law enforcement officers arrived, and Brad Bartlett ["Bartlett"], a detective with the Montgomery Police Department's narcotics division, was notified that Williams was telling the officers that he was working with Bartlett (Tr. 24, 25). Bartlett then came to the scene to investigate further, and when Bartlett asked him why he was using Bartlett's name, Williams stated his belief that his possession of the marijuana was pursuant to an agreement that he'd previously made with Bartlett (Tr. 24, 25, 51).

Bartlett and Williams then went to the offices of the High Intensity Drug Trafficking Area Task Force ["HIDTA"], where Bartlett read Williams his *Miranda* rights from a standard "rights form" (Tr. 27). Williams signed the form, indicating that he understood his rights, and then began answering Bartlett's questions (Tr. 27).

According to the indictment (Doc. # 3), Williams previously had been convicted of multiple felonies. Consequently, the United States charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2005) and possession of

marijuana, in violation of 21 U.S.C. § 844(a) (2005).[3]

## II.   DISCUSSION

Williams challenges the legitimacy of the stop and virtually all subsequent police actions (Doc. # 21). Evidence before the court, however, establishes that the traffic stop was supported by probable cause to believe that Williams had violated several State traffic laws. *See United States v. Purcell*, 236 F.3d 1274, 1276 (11th Cir. 2001) (holding that a traffic stop was legitimate when the officer had probable cause to believe that defendant's car was following too closely behind another vehicle); *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990))); *United States v. Pollock*, 926 F.2d 1044, 1046-47 (11th Cir. 1991).

Thus, the search of Williams's person was justified by Sutley's reasonable concern for his own safety (Tr. 8-9). *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977); *Purcell*, 236 F.3d at 1277-78 (citing *Mimms*). The only issues for the court to decide are (1) the propriety of Sutley's questioning of Williams and the subsequent vehicular search, and (2) the

---

[3]   The three-count indictment also included charges relating to an earlier incident involving circumstances that are not materially related to facts that are important for the purpose of this motion.

admissibility of the statements that Williams made after his arrest.

### A.     *Sutley's Questioning and the Vehicular Search*

It is at least arguable   - and argued by Williams -   that, when Sutley asked him if he had marijuana in his pocket, the officer acted improperly and exceeded the legitimate scope of the traffic stop and the search for weapons.  Moreover, the question arguably jeopardized Williams's Fifth Amendment privilege against self-incrimination because he had not been advised of his right to remain silent or his right to counsel and because the question clearly elicited alternative responses, one of which could constitute an admission of criminal conduct (Doc. # 20).[4]

The United States contends that the question was proper and did not constitute a custodial interrogation (Docs. # 26, 38).  Assuming the propriety of the search, the United States also contends that the subsequent vehicular search was incident to Williams's arrest and, therefore, proper.  The court agrees with the United States.

The smell of marijuana as well as Williams's excessive nervousness and his attempts during the pat-down to evade Sutley's hands, when considered together, are sufficient to establish reasonable suspicion to investigate whether Williams possessed marijuana.  ***United States v. Hernandez***, 418 F.3d 1206, 1210-11 (11th Cir. 2005) (concluding that questioning and detention were justified by reasonable suspicion–based on, *inter alia*, nervousness–that

---

[4]     Given Williams's actual criminal history, **his** answer to the question constituted an admission of felonious conduct.

defendant had committed more than the mere traffic violation that led to the stop); *Purcell*, 236 F.3d at 1279-80 (addressing the duration of the traffic stop and stating also that "reasonable safety concerns justified . . . asking Purcell whether he had any firearms, guns or drugs in the car" regardless of whether "his suspicions" were "articulable"); *see also* ***United States v. Ozbirn***, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that the smell of raw marijuana alone gave rise to a reasonable suspicion "necessary to justify further detention and questioning").[5]

Furthermore, the evidence does not support the conclusion that Sutley was required to inform Williams of his *Miranda* rights before questioning him about the contents of his pocket. The proper question for the court to consider is "whether [the] traffic stop [and subsequent pat down] exert[ed] upon [Williams] pressures that sufficiently impair[ed] his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." ***Berkemer v. McCarty***, 468 U.S. 420, 437 (1984) *discussed in* ***United States v. Acosta***, 363 F.3d 1141, 1148-50 (11th Cir. 2004). "Put another way, suspects 'subjected to restraints *comparable to those associated with a formal arrest*' must be advised of their *Miranda* rights." *Acosta*, 363 F.3d at 1149 (quoting *Berkemer*, 468 U.S. at 441).

Although Sutley's request to search Williams for weapons may have extended beyond the restrictiveness and intrusiveness typical of traffic stops, the circumstances were not

---

[5] Sutley also testified that his law enforcement experience and training led to his suspicion that what he felt in Williams's pocket was a bag of marijuana. The court does not need to determine whether his belief was sufficiently articulable.

comparable to those associated with a formal arrest.  *Contrast* ***Acosta***, 363 F.3d at 1150 (holding that ***Miranda*** warnings were not required) *with* ***United States v. Perdue***, 8 F.3d 1455, 1466 (10th Cir. 1993) (applying ***Berkemer*** to ***Terry*** stops and holding, nevertheless, that ***Miranda*** warnings were required when the defendant was stopped in a "rural area not subject to the public's scrutiny" and questioned while lying face down on the ground amidst officers with weapons drawn and police helicopters flying overhead).

Granted, the time of the stop suggests that Williams did not enjoy the comfort of daylight, unlike the defendants in ***Acosta***.  Nevertheless, contrary to the situation in ***Acosta***, Sutley was acting alone, and nothing in the record suggests that he ever drew his weapon. Moreover, similar to the circumstances in ***Acosta***, the stop took place close to a very busy, public highway.  Moreover, Williams was not handcuffed, and he was able and willing to resist Sutley's efforts.  In other words:

> The restraint to which [Williams] was subjected during the *Terry* stop is the minimal amount necessary for such a stop or close to it.  The stop did not involve the type of "highly intrusive" coercive atmosphere that may require ***Miranda*** warnings even before a formal arrest is made.  The totality of the circumstances were such that a reasonable person in [Williams's] position would not have believed that he was utterly at the mercy of the police, away from the protection of any public scrutiny, and had better confess or else.

*Acosta*, 363 F.3d at 1150.

The court has also considered other elements of the totality of the circumstances, namely, Sutley's intent when he stopped Williams, and, as a result, the court concludes that

7

Sutley's question was not a custodial interrogation. "The requirement that an individual receive Miranda warnings before answering questions applies only when the individual is in custody." *United States v. Torkington*, 874 F.2d 1441, 1445 (11th Cir. 1989). Whether a suspect is in custody "turns on whether restrictions on the suspect's freedom of movement are 'of the degree associated with formal arrest.'" *United States v. Moya*, 74 F.3d 1117, 1118 (11th Cir. 1996)(citation omitted).

Unquestionably, Williams was not under arrest when Sutley asked him about the contents of his pocket, and ordinarily, that would end the inquiry. In this case, Sutley did not casually observe Williams' traffic violations while on routine patrol. Instead, he was *instructed* to stop Williams, and he must have understood that preventing the inevitable traffic violations - which many drivers commit and which many troopers, acting in their discretion, overlook - was not the purpose of the stop. The stop was clearly intended to further the ongoing investigation. Nevertheless, Sutley was not a member of the investigatory team, and he knew nothing about the investigation. The record is therefore devoid of evidence that when he stopped Williams, Williams was in custody. Consequently, *Miranda* warnings were not required. *Id.*

Accordingly, neither Williams's response to the question nor the discovery of the marijuana are tainted, and the search of Williams's vehicle following his arrest was unquestionably proper. *United States v. Gonzalez*, 71 F.3d 819, 824-25 (11th Cir. 1996) (holding that a search of the vehicle's glove compartment was lawful as part of a search

8

incident to arrest of the driver); ***Thomas v. Newsome***, 821 F.2d 1550, 1555 (11th Cir. 1987).[6]

### B.   *Post-arrest Statements*

In arguing that the search conducted after Sutley handcuffed Williams and placed him in his patrol car was incident to his arrest, the United States concedes that Williams was in fact under arrest at that time. Evidence before the court, however, demonstrates that Williams was not informed of his *Miranda* rights until after he and Bartlett arrived at the HIDTA offices. Therefore, any statements Sutley made in response to questions from the time Sutley placed him under arrest to the time Bartlett read him his rights should not be admitted against him. ***Jacobs v. Singletary***, 952 F.2d 1282, at 1291 n.7 ("[I]f the accused is in custody, the police do not read the accused [his] rights, and a question is asked and answered, then the statement must be suppressed." (citing ***Harryman v. Estelle***b, 616 F.2d 870, 873 (5th Cir. 1980))).[7]

---

[6] Williams does not contend that the scope of the search exceeded what is permitted in a search incident to a lawful arrest.

[7] Williams's statements after Bartlett read him the rights form, which Williams understood and signed, are admissible. After signing the form, Williams told Bartlett that he wanted to speak with him (Tr. 27). Therefore, the government has met its heavy burden of proving by a preponderance of the evidence that Williams's decision to answer Bartlett's questions was "an uncoerced choice." ***United States v. Harris***, No. 04-13036, 2005 WL 1793517 (11th Cir. 2005); *see also* ***Moran v. Burbine***, 475 U.S. 412, 421 (1986) (stating the requirements for a valid waiver of *Miranda* rights); ***United States v. Farris***, 77 F.3d 391, 396 (11th Cir. 1996) (noting the burden of proof).

### III.    CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the motion be GRANTED in part and DENIED in part.  It is the further RECOMMENDATION that:

1. the motion be GRANTED with respect to all statements made by Williams in response to questions asked from the time he was arrested until he was informed of his *Miranda* rights.

2. the motion be DENIED in all other respects.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 16 September, 2005.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See **Stein v. Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982).  *See also **Bonner v. City of Prichard***, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 10th day of September, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE