IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.  2:05CR68-T |
| | ) | [WO] |
| | ) | |
| KEITH ELDRIDGE WILLIAMS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on defendant's ["Williams"] Motion to Suppress evidence obtained as the result of what Williams contends was an unlawful search and seizure (Doc. # 20).  Having reviewed the parties' submissions and considered testimony at an evidentiary hearing, the magistrate judge recommends that the motion be granted.

**I.   FACTS AND PROCEDURAL HISTORY**

On 5 February 2005, detective Brad Bartlett ["Bartlett"], a narcotics division officer with the Montgomery Police Department, executed a warrant to search "3157 Montezuma Drive, Montgomery, Alabama; any persons, outbuildings and vehicles located within the curtilage thereof or any vehicles belonging to any subjects located at the residence." (Suppression Hr'g Tr. ["Tr."] 28; Doc. # 37, p. 3) [herein, 3157 Montezuma Drive is referred to as "the residence"].  Williams was located inside the residence when the warrant was executed, and the vehicle he had driven there was parked on the street nearby (Tr. 46-47). A search of Williams's vehicle, which Bartlett testified was conducted pursuant to the

warrant (Tr. 48),[1] led to the discovery of a handgun and $75,000 in U.S. currency (Tr. 47).[2]

According to the government's indictment, Williams had been previously convicted of multiple felonies. Consequently, he was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2005).[3] After reviewing the parties' submissions, the court held an evidentiary hearing on 16 June 2005.

## II.  DISCUSSION

Williams contends that the warrant at issue was not supported by probable cause and was constitutionally imprecise (Doc. # 20). The United States contends that the warrant is valid, and that, regardless, the application of the good faith exception to the exclusionary rule validates the warrant and the search (Doc. # 38, p. 6).

---

[1] The United States does not contend that Williams lacks standing to challenge the validity of the warrant. Moreover, the United States does not suggest or offer evidence that Williams lacked a proprietary or possessory interest in the vehicle searched or the items seized pursuant to the warrant. Finally, Bartlett testified that his intent in crafting the affidavit and warrant was to allow for the search of all vehicles that had been driven to the residence by persons found therein when the warrant was executed (Tr. 42-44). Therefore, the court finds that Williams has standing. *See*, *e.g.*, **United States v. Delgado**, 903 F.2d 1495, 1501 (11th Cir. 1990) ("A person possesses standing when he has a reasonable expectation of privacy from governmental intrusion in either the premises searched or the items seized.").

[2] Williams was arrested and transported to the police department, where Bartlett informed him of his so called *Miranda* rights (Tr. 33, 65). *See* **Miranda v. Arizona**, 384 U.S. 436, 479 (1966). Williams initially invoked his right to remain silent and his right to counsel before reinitiating a conversation with Bartlett that led to an agreement whereby Williams was to arrange for the delivery of 10 kilograms of cocaine (Tr. 66).

[3] Williams was charged with other crimes relating to an incident that occurred in March and involved circumstances that are materially unrelated to his February arrest. The court has addressed Williams's motion regarding the March incident in a separate opinion.

### A.  *Probable Cause*

During the month prior to obtaining the warrant at issue, Bartlett had been in contact several times with an anonymous source who informed him of her suspicion that illegal activity was occurring at the residence (Tr. 34-35, 54-55).[4] She told him that brief visits were frequently paid by persons driving cars registered in other states, and she reported their license plate numbers (Tr. 34-35). Although she did not report the commission of any crimes, she did report smelling something funny, but she did not know what the smells were or what various drugs smelled like (Tr. 35).

Prior to obtaining the warrant, Bartlett knew very little of his anonymous source. He knew "her name, where she worked, [and] where she lived" (Tr. 54). He knew that she had no local criminal history and had reported being the victim "of a few thefts and things like that" (Tr. 55), but he did not know whether she had previously "provided information to the police about crimes or criminals any time before then" (Tr. 55).

Nevertheless, police followed vehicles she reported seeing at the house, but Bartlett did not testify whether this surveillance led to any additional evidence (Tr. 54).[5] Moreover, based on the information she provided, on 3 February 2005, Bartlett ordered a "trash run" to obtain garbage from the residence (Tr. 30).

Describing the "trash run" procedure, Bartlett testified, "We have our city sanitation

---

[4]The "anonymous source" was never named or otherwise identified prior to the suppression hearing.

[5]The affidavit supporting the warrant, which is set forth in relevant part *infra*, suggests the police were able to identify one of the vehicles as belonging to a "drug violator" (Doc. # 37, p. 5) but offers no indication that any additional surveillance had been conducted.

3

pick up trash from a residence, and we go through the trash." *Id.* In this case, the operation was initiated when Bartlett telephoned a "Mr. Dickey," who Bartlett presumes is, or was at the time, a supervisor with the City sanitation department (Tr. 56). Bartlett did not know who actually retrieved the trash or even where the trash actually came from (R. 35-39). Nor did he know how the trash was brought to the police station, conceding unequivocally that it just "showed up" (Tr. 37-38). A search of the trash that materialized at the police station revealed marijuana and cocaine residue as well as a food delivery receipt with the address "3157 Montezuma Drive" (Tr. 60-61).

With these facts, Bartlett prepared an affidavit setting out the following "grounds for an anytime 'Knock and Announce' search warrant":

> 1) Probable cause being that in the month of January 2005, an anonymous source contacted DET Bartlett and advised that a B/M resided at 3157 Montezuma Drive. The source stated the B/M would have vehicles with out of state tags (Florida, Georgia and Texas) visit him for a few minutes and leave. The source also stated that he/she observed a B/M get out of a red sports car (FL tag) with a duffle bag and enter the residence of 3157 Montezuma Drive, Montgomery, AL. After a few minutes the [sic] B/M left the residence with the duffle bag. Once the B/M left the residence, the source observed several B/M's [sic] show up at the residence and smelled a foul odor emitting from the residence. The anonymous source also gave a tag # from a vehicle that frequents the residence. The vehicle is registered to a Keith Fitts who is a known drug violator.
>
> 2) Further probable cause being that on February 03, 2005, through investigative means, *DET Bartlett retrieved* burnt Marijuana [sic] residue, a bag of white powder residue tested positive [sic] for the presence of Cocaine

> [sic] residue and a food receipt with the name Roderick Lewis of 3157 Montezuma Drive *from the residence* of 3157 Montezuma Drive, Montgomery, AL.
>
> The foregoing is based on the personal knowledge of this affiant and on the facts obtained by the Montgomery Police Department Narcotics and Intelligence Bureau.

(Doc. # 37, p. 5) (emphasis added).

The primary issue before the court is whether the affidavit prepared and sworn to by Bartlett established probable cause for issuing the warrant. The court evaluates the affidavit's numbered statements separately.

### 1.     Information from an Anonymous Source.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. As the Eleventh Circuit Court of Appeals has noted:

> The [F]ourth [A]mendment contemplates that, to authorize entry upon private property, a detached and neutral magistrate will consider the sworn affidavits of law enforcement officials supporting a claim that criminal activity is afoot. With a detached perspective, the magistrate is then able to render a dispassionate decision concerning the presence of probable cause. Where probable cause exists, society's interest in thwarting criminal activity outweighs the individual's privacy interest.

***United States v. Blasco***, 702 F.2d 1315, 1324 (11th Cir. 1983).

"Probable cause to support a search warrant exists when the totality of the

circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991)).  While the totality of the circumstances test is by its nature flexible, when probable cause is based on hearsay (as opposed to direct police observation), the affidavit(s) provided in support of the warrant must at least allow "for a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Illinois v. Gates*, 462 U.S. 213, 234 (1983).  Thus, the Court of Appeals has

> upheld the validity of the probable cause affidavit where the confidential informant had provided information that had proven to be truthful and reliable in the past, *id.* [citing *Brundidge*, 170 F.3d at 1353]; where the level of detail showed the informant was unlikely to lie because the lies would be discovered in short order, *id.* at 1353-54; where police were able to independently confirm some of the facts the informant provided, **[*United States v.*] *Martin*[, 297 F.3d 1308] at 1315 [(11th Cir. 2002)]**; *United States v. Talley*, 108 F.3d 277, 281 (11th Cir. 1997); and where the confidential informant made a statement against his or her penal interest to the officer, *United States v. Farese*, 612 F.2d 1376, 1378 (5th Cir. 1980).

*United States v. Roland*, 133 Fed. Appx. 660, 662, 2005 WL 1274479, at *1 (11th Cir. May 31, 2005).

The warrant before the court in the instant case contains no information about the alleged informant tending to demonstrate her veracity, reliability or basis of knowledge (Doc. # 37, p. 5).  Moreover, the information provided by the alleged informant was too

vague and inconsequential to give rise to a probability that a crime was being committed.[6] In fact, the only direct, objective evidentiary support that Bartlett could provide in the affidavit was that one of the vehicles identified by the source was "registered . . . to a known drug violator." *Id.* The source provide no information whatsoever to connect Williams with criminal activity. Without more, the information provided by the source is insufficient to justify an intrusion into Williams's privacy.

### 2. Information obtained through independent investigation.

Interestingly, the United States does not contend that the information provided by the anonymous source was sufficient to establish probable cause. Instead, the United States contends that this information, when considered with the information obtained as the result of "items seized during the course of [the] 'trash run,'" suffice to establish probable cause (Doc. # 38, p. 6).[7]

The "trash run," however, was conducted by employees, presumably, of the City sanitation department without police supervision, and, for aught that appears, without the

---

[6]To find that the information provided by this informant under these circumstances is sufficient to establish probable cause would essentially sanction searches of virtually every popular residence, at least those inhabited by a "B/M" and frequently visited by other "B/M's," as long as an odor - deemed "funny" by anonymous sources, with anonymous motivations, and anonymous abilities to observe or perceive - emits from the dwelling.

[7]The United States also notes additional "surveillance" (Doc. # 38, p. 6). Aside from the evidence obtained from the "trash run," however, the warrant affidavit neither explicitly nor implicitly refers to any additional surveillance other than what has already been discussed, and the United States offers no explanation or support for its contention. Notwithstanding "additional surveillance", there is no evidence of the information yielded by it.

supervision of anyone. In fact, as noted *supra*, Bartlett has no personal knowledge of how the trash was retrieved, whether it was actually retrieved from the residence in question, how it materialized at the police station, or by whose hands any one of those actions occurred. This state of affairs is problematic - to say the least - for at least two reasons:

1. With no knowledge of the persons who conducted the "trash run" or how or when (or for that matter where)[8] it was conducted, Bartlett is simply unable to attest to the trustworthiness of what amounts to deputized phantom informants; and

2. Bartlett's sworn statement that *he* "retrieved" drug residue and a receipt with the suspect address on it "from" the suspect address is misleading because, as he testified, he did not know from whence this evidence came (Tr. 38).

The law is clear that a material misrepresentation or omission, when recklessly made or omitted, in an affidavit in support of a warrant compromises the warrant's legitimacy. *See*, *e.g.*, **Holmes v. Kucynda**, 321 F.3d 1069, 1083 (11th Cir. 2003).

> "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing" [**United States v. Halsey**, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)] (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon

---

[8] All of Bartlett's testimony about the "trash run" is hearsay - a fact that is not necessarily fatal. The problem is that he - and therefore the court - is unable to identify the unknown affiant, i.e., the person or persons who collected the trash and represented to Bartlett (or someone else) that it was in fact collected at the residence.

> information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

***Franks v. Delaware***, 438 U.S. 154, 164-65 (1978) *quoted in part by* ***Holmes***, 321 F.3d at 1083.

Bartlett's testimony leads unavoidably to the conclusion that his sworn statement that he himself had retrieved the evidence from the suspect's residence was at least a reckless, material falsity concealing the true, troubling circumstances of the so-called "trash run." Having already determined that the remainder of the warrant is insufficient to establish probable cause, the court concludes that the warrant is void. ***Dahl v. Holley***, 312 F.3d 1228, 1235 (11th Cir. 2002) (quoting ***Franks***, 438 U.S. at 171-72, for the proposition that a warrant issued as the result of an affidavit containing misleading information may nonetheless be "valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause").

### B.   *Curtilage*

Notwithstanding the invalidity of the warrant, Williams's motion should be granted for another reason. His vehicle was parked on a public street and was therefore not within the curtilage of the residence. *See* ***United States v. Sears***, No. 04-13286, 2005 WL 1427509 (11th Cir. June 20, 2005) (upholding a search of a co-defendant's vehicle pursuant to a "warrant that allowed [police officers] to search Sears' home and all vehicles located on its

9

curtilage. *Once Jones pulled his van into Sears' driveway*, his vehicle was located on the curtilage." (emphasis added)); ***United States v. Hall***, 47 F.3d 1091, 1097 (11th Cir. 1995) ("In general, the curtilage is defined as the area around the home which 'harbors those intimate activities associated with domestic life and the privacies of the home." (quoting ***United States v. Dunn***, 480 U.S. 294, 301 (1987))); ***United States v. Roberts***, 747 F.2d 537, 541-42 (9th Cir. 1984) (finding that a private road linking a few residences to a public road was not within the curtilage of any of the residences); ***United States v. Stanley***, 597 F.2d 866, 870 (4th Cir. 1979) (finding that a common parking area without assigned parking spaces was not within the curtilage of any of the mobile home lots); ***United States v. Borno***, 946 F. Supp. 972, 977 (M.D. Fla. 1996) (holding that a vehicle was in the curtilage of the residence to be searched and, thus, subject to search when "it was parked off the street and located very close to the front door of the residence"); ***Rogers v. State***, 543 So.2d 719, 720 (Ala. Cr. App. 1988) ("It is . . . clear that a search warrant 'would not cover a car parked nearby on a public street, even if it were clear beyond question that the vehicle belonged to the occupant of the described premises.'" (quoting WAYNE R. LAFAVE, 2 SEARCH & SEIZURE § 4.10(c) (2d Ed. 1987))).[9]

Generally, the challenger has the burden of proving a search warrant invalid. ***United***

---

[9]The language used in the warrant suggests that police were authorized to search the vehicles belonging to anyone located within the residence when searched regardless of where the vehicle might be located. This court is not compelled to devote judicial resources to dispelling this absurd proposition. After all, Bartlett did not interpret the warrant that way (Tr. 42-43). Instead, he believed that because the residence had no driveway, the curtilage extended to the street. This proposition, which the United States has not adopted, is equally absurd.

*States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir. 1977) (holding that the defendant has the "initial, unshiftable burden of alleging and proving some fact sufficient to make a prima facie showing of illegality" and discussing *Batten v. United States*, 188 F.2d 75 (5th Cir. 1951); *United States v. Smith*, 499 F.2d 251 (7th Cir. 1974).  In this case, Williams has met his burden.

C.     *Exclusionary Rule, the Good Faith Exception and the Fruits of the Tainted Search*

Williams asks the court to exclude the evidence obtained as the result of the search, including the weapon found in his vehicle and any statements he made while in police custody (Doc. # 20).  The United States contends that, even if the warrant was invalid, the good faith exception should apply because "officers acted in good faith reliance upon the search warrant" (Doc. # 38, p. 6).

The court has made clear that Bartlett's efforts to secure a warrant were at best reckless and perhaps much worse, thus lacking any sign of good faith, and it is highly unlikely that the judge in this case would have issued a warrant had he known the truth. Therefore, suppressing the evidence in this case will further the purposes of the exclusionary rule, *see, e.g.*, *United States v. Leon*, 468 U.S. 897, 918-25 (1984); *United States v. Robinson*, 336 F.3d 1293, 1295-1296 (11th Cir. 2003), and the good faith exception does not apply. *United States v. McGough*, 412 F.3d 1232, 1239-40 (11th Cir. 2005); *United States v. Martin*, 297 F.3d 1308, 1313 (2002) (discussing the four circumstances in which the

exception does not apply).[10]  "[T]he Government bears the burden of demonstrating the applicability of the *Leon* good faith exception . . . ." ***Robinson***, 336 F.3d at 1297.  In this case the United States has failed to meet its burden.

The unreasonable search of Williams's vehicle led to the discovery and seizure of $75,000 in cash and a firearm as well as Williams's arrest, during which Williams made statements to the police.  The money, weapon and statements were the results of the initial Fourth Amendment violation and should not be used as evidence against Williams. *See*, *e.g.*, ***Wong Sun v. United States***, 371 U.S. 471, 484-87 (1963); ***United States v. Perkins***, 348 F.3d 965, 969 (11th Cir. 2003).

### III.  CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the motion be GRANTED and that all evidence obtained as the result of the search in question be suppressed.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 15 September, 2005.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

---

[10]Furthermore, Bartlett's mistaken belief that the curtilage of the residence extended onto the public street cannot support application of the good faith exception.  ***United States v. Chanthasouxat***, 342 F.3d 1271, 1279-80 (11th Cir. 2003).

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  **Nettles v. Wainwright**, 677 F.2d 404 (5th Cir. 1982).  *See* **Stein v. Reynolds Securities, Inc.**, 667 F.2d 33 (11th Cir. 1982).  *See also* **Bonner v. City of Prichard**, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 9th day of September, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE